Thank you, Judge Braver, and good morning. Thank you for that warm welcome. My name is Chan Sethi, and I'm counsel to Petitioner Walter Orozco-Lopez. I will address the common legal questions in the three cases this morning. My colleagues, Ms. Armstrong, Mr. Pontaroso, and Mr. Lee, will be addressing the application of the right to counsel in their cases and the additional case-specific arguments. I'll endeavor to save four minutes for rebuttal, and I will watch the clock. May it please the Court, as I said at the outset, the common and dispositive legal question in these cases is whether petitioners had either a statutory or constitutional right to retain counsel at their own expense when appearing before the IJ hearing their reasonable fear claims. The answer is yes, for three reasons. First, this Court in Zuniga v. Barr has already determined in unqualified terms that a non-citizen has, and I will quote, a right to representation by an attorney in his reasonable fear review hearing before the IJ. But that's a removal proceeding. So how is a reasonable fear proceeding a removal proceeding when removability isn't even at issue? Your Honor, we believe that these proceedings are, in fact, a form of removal proceeding, and we draw strength from that argument from Zuniga itself. Now, let me ask you this. Do you say that does Zuniga compel the result here, or is Zuniga a jump-off point and would be somewhat of an extension? Because in my view, it may be a stretch to say that Zuniga controls here. Zuniga's holding was based on a statutory right to counsel in expedited removal proceedings, even if the opinion then touched on the broader legislative context, referring to the statutory right to counsel for removal proceedings generally. I understand Escobar read it differently, but Escobar did not provide any reasoning. So if you can address those concerns, I would like to hear the argument. Yes, Judge Callahan, I will try to persuade you. Well, I'm not, I'm just stating that, you know, if it's a little bit of an extension, do you acknowledge that, and or is, because it's not exactly the same in my view. So that's what I need to hear about. We agree, Your Honor, that the facts in Zuniga concerned an individual administrative removal. Our view, though, is that the ultimate reasoning in Zuniga compels the result we seek here, and there are two reasons for that. The first is, as Your Honor noted, the Zuniga court said that the broader legislative context beyond the specific provisions dealing with administrative removal supported a right to counsel in reasonable fear of proceedings. The language in that sentence of the court's opinion is not qualified. And second, I think it's important to look at the overall context of that case. The government in that case made the very argument that it's making in this case. Specifically, if I understand the crux of the disagreement between the government and us, is that they believe Morales-DiSierdo, the 2007 in-bank opinion, decides this case. And the reasoning, as I understand, is that they believe you can infer from the lack of a right to counsel in reinstatement proceedings that there is no right to counsel in reasonable fear of proceedings arising from reinstatement. And that argument was expressly presented to the Zuniga court in the petition for panel rehearing, and it was rejected by the Zuniga court. And you see that in footnote 8. The Zuniga court is quite clear in footnote 8 that the initial stage of proceedings governing reinstatement does not involve a right to counsel. We have no quarrel with that position. Indeed, it's decided by Morales-DiSierdo, the on-bank opinion that my friend Ms. Carlson relies on. But Zuniga is also clear in footnote 8, that does not address the discreet question. I'm sorry to interrupt, but Judge Graber has dropped. So should we pause argument, or do you want to continue going? No, we should definitely pause. Okay. All right. So give... Take it back to the point where you noticed her drop. So, or we can... So stop the clock, and then we'll go back and refer. I'm sorry, counsel. I am attempting to get a hold of the judge. Okay. Okay. Am I the only one not on video now? That's correct. Okay. We can hear you well. Okay. Well, that's something. I apologize. I don't know what happened. Apparently, several of the courtrooms that are ongoing today have had this to seeing the time clock. So if I may ask Judge Callahan to be the provider for that, that will be very helpful to me. Okay. I will be happy to do that. And I'm looking... We restored a minute, because the courtroom clerk ascertained she was the one that noticed you dropped off, and we restored a minute. And perhaps, Mr. Steffi, can you remind me, did you state any aspirational amount that you wanted to reserve for rebuttal, or how was that working? I aspired to reserve four minutes for rebuttal, Your Honor. Okay. That's what I thought. Okay. I'll try to remind you on that, just because we have a little bit of a challenge on that. I know it's a little hard to know when it's like doing double Dutch jump rope, when you can jump in when people are talking. Right. If I hear your voice, we'll defer to that. Okay. I appreciate that. And where I left off, Judge Callahan had just asked the question whether a reasonable fear proceeding is part of or a type of a removal proceeding, even though it does not involve the removability of the individual. And I was cut off before any answer. Understood, Judge Baker. Go ahead, Mr. Steffi. Great. Thank you, Judge Callahan. I'm glad to have you back, Judge Craver. Well, I'm glad to be back. So I think there are two points that I could make. The first is, and I believe Judge Callahan was asking, does Zuniga decide that question itself? And our primary submission is that, yes, Zuniga does decide that question. And here's why. First, Zuniga takes pains to say that it is looking at the broader legislative context beyond the provision specifically dealing with Section 1228. And it states in unqualified terms in that very sentence that the right to counsel applies to reasonable fear proceedings. Citing Section 1362 for that proposition as applied to administrative removal must apply equally as it applies to those in reinstatement proceedings. There is no difference in terms of those two proceedings. But second, and I think this is crucial because the government's primary argument in this case, if I understand it correctly, is that Morales-Esquerdo, the 2007 N-Bank opinion, addresses the question and indeed decides it. And that argument was presented to the panel and Zuniga in the petition for rehearing, and the panel expressly addressed that argument in its amended opinion. And I would draw your attention to footnote eight. And the critical error we submit in the government's argument is they're trying to draw an inference that the panel itself refused to draw. The government's argument is that you can infer from the fact that there's no right to counsel in reinstatement that there's also no right to counsel in reasonable fear proceedings that arise in the reinstatement context. That precise argument was rejected by the Zuniga panel. So I don't see how the government can succeed on round two, regardless whether you consider that footnote and the reasoning adopted in Zuniga as part of the core holding or as part of DICTA. This court is well aware of this somewhat unique well-reasoned DICTA rule. So I guess I would say that I agree with you that Morales doesn't decide the reasonable fear part of it. But where I possibly have questions is, so I guess I say the government goes too far there. And then I would say, yes, you can make the argument that Zuniga covers it in the reinstatement process, the reasonable fear. But I don't think Zuniga exactly answers that question in the same way. So let me ask you this. When you have someone that's already been removed, and in some cases, in some of the cases, we have people that have been removed more than one time, so they have more than one reinstatement. So they got process as far as that goes. Won't a petitioner have counsel if the IJ in the reasonable fear refers the matter to a full withholding removal? And isn't that reasonable fear process just a mechanism for screening? Because why should people that have been previously removed, have had process there, be in the exact same position as someone that comes in for the first time? And, you know, that you have these people that have already had all this process, and the reinstatement, you can see, Morales covers that. You can reinstate them. But why aren't they in a little bit of a different position? So were we writing on a blank slate, Your Honor? Perhaps we would be in a different position. Of course, even if you think that Zuniga only applies, and I'll assume for purposes of this question that Zuniga only applies to those in administrative removal, the factual landscape you describe is no longer accurate. Because we know that similarly situated individuals, that is people who are part of the screening process, that is a predicate to full withholding proceedings, already have a right to counsel. That's Zuniga. So the question then becomes, we're not asking for an exception to the general rule. We're asking to be treated the same as those who already have that right and who that same regulation applies to, right? Those in administrative removal and those in reinstatement, when seeking protection under CAP or withholding protection, are governed by the same proceedings. So the analogy there, I think, is incomplete. Counsel, this is just for this. Sorry, as you say, it's hard to know when to ask a question. In the briefing, counsel has relied somewhat on the proposition that a regulation has to apply across the board. But isn't the question here whether the statute applies across the board? And if 1362, by using the term any removal proceeding, is broad enough to cover a proceeding related to whether a person will be removed or not, given their allegation of reasonable fear, does it matter? Do we have to even get to what the regulation says or how it applies? There is a secondary argument, Your Honor, governing the regulation and its proper interpretations. Zuniga said that the regulatory silence cannot be interpreted to confer discretion. So I think the argument, if we were looking at the regulation itself, would be that now that we know the regulation cannot confer discretion in situation A, it cannot confer discretion into, excuse me, discretion in situation B. But why do we care about the regulation if the statute gives a privilege for someone to bring counsel in any removal proceeding? Why does the regulation matter? Why do we have to even get to that? That is a fair question. And so let me try to address it head on. I think the question is, under 1362, is this a removal proceeding? And the answer is yes. I think two key points here. The first is I would urge you to look at the regulation that promulgated reasonable fear proceedings. At 64 Federal Register 8485, these very proceedings are described as a form of removal proceeding, albeit streamlined removal proceedings, but that's the government's own word. But let's set aside what the government has described them as. And let's look at, is there a test? And we would submit there is a test. This Court in Morales v. Gerardo took the argument about what is a removal proceeding seriously, and it didn't look just at labels. It looked at the substance. And the Court's opinion in Morales said the key, indeed, I think the opinion called it the second more difficult inquiry is, is there relief from removal? That is the critical question in a removal proceeding. That's exactly what we have in this case. So looking at the substance of what's happening here, this is, it looks like a duck, it quacks like a duck. In our submission, it is a duck. I have one more question, counsel, before I yield to the people on the video. And that has to do with, perhaps you're the wrong person to ask this question of, but you mentioned that your colleagues would be talking about the particulars of their clients' cases. But if we were to agree with you that the statute grants the privilege of counsel to these individuals, wouldn't we just send everything back to start over with counsel? And why do the individual circumstances matter in that event? I don't want to step on my colleagues' toes, but I will answer the question to this extent, Your Honor. In Mr. Orozco-Lopez's case, there are no other arguments. So, yes, the answer would be a remand for rehearing because prejudice is conclusively presumed. That would be true in the other two cases, but I think each of those cases has a logically antecedent argument that they are asking you to consider. I think one has a waiver issue, too. I mean, your client, it wasn't discussed the possibility of representation. That's part of the reason. So that's a factual difference in some of the other cases. Let me ask this. Would he be required to remand even if there were grounds on the substantive issues to affirm the BIA? Namely, suppose the record establishes that he didn't have a fear because he wasn't tortured. Yes, Your Honor, and that's exactly it. Sorry. Assume that's true. Would we still have to remand? Yes. Assuming that's true in all cases, we would still have to remand because prejudice is conclusively presumed in these cases? If it's a statutory right. But if it's not a statutory right and it's a constitutional right, prejudice is a factor. Am I not correct? In our submission, yes, that's the first question. There is no dispute between the parties that prejudice is presumed with respect to a statutory right. So remand should be required. That's Zuniga. That's already been decided. There's no dispute. As to the constitutional question, of course, our submission is that prejudice should also be presumed. And seeing my time is running down. That's a good argument, but it's not as strong. There is case law that stands for the proposition that prejudice can be considered as a constitutional right. Am I wrong on that or am I just making that up? No, you're absolutely not making it up, Your Honor. Prejudice is definitely something to be considered generally when a due process right is asserted. I think the question here, as we try to elaborate in our briefs, is what to do when the primary justification for prejudice in the statutory context is that a constitutional right is at play. This Court's opinion, I would draw your attention to Gomez-Velasco, for example. So in fairness to Judge Thelma, it does turn to some extent on whether we would determine if it's a statutory or a constitutional right. The Court would have more discretion on analyzing prejudice if we said it's not a statutory right but it's a constitutional right. Only if you disagree with our submission, Judge Callahan. Okay. We hope you will agree. Can I ask one more question? Sure. Notwithstanding the possibility that there is perhaps counterintuitively a greater benefit to a statutory right than a constitutional right in this context, don't we still have to consider the non-constitutional issues first? Yes, Your Honor. We only get to the due process argument in this case if you disagree with us on the meeting of Zuniga. And further, if you disagree with us on a, for lack of a better word, I'll call it de novo interpretation of Section 1362. Unless the Court has further questions, I would reserve the remainder of my time. Yes. We've had a lot of questions of you, Mr. Fethi, and we've also had our little blip. So I'm being drunk with power as the presiding judge here. I'm going to give you three minutes for rebuttal. Thank you, Your Honor. Okay. And because you're the first person up, too. So thank you. All right. Then we're ready for, let's see. Are we ready? Let me look here on the. I believe there's Mr. I'm next. Okay. Do I see you? I don't see you yet. You don't see me? Oh, now I see you. I turned my camera on. Now I see you. I see you now. You're prominent. Okay, good. Okay. Wonderful. Okay. State your appearance for us. Thank you. Of course. Good morning, Your Honors. May it please the Court. Maddie Armstrong on behalf of Petitioner Jonas Myrtle. I'll spend five minutes addressing the right to counsel issue. My colleague, Mr. Pontroso, will spend five minutes talking about the reinstatement issues in our particular case. And we intend to reserve two minutes for rebuttal. So five minutes is your, is that your total amount? Or was that your. Yeah. Five minutes is my total amount. Okay. So you're going to talk three minutes and two minutes for rebuttal? Is that right? No, I will not be doing rebuttal. So five minutes is my total amount and my colleague will do seven minutes. Okay. Can we put her back to five minutes since I've spent all this time talking to her? Okay. Thank you. Thank you so much, Judge Callahan. So as Mr. Sethi was explaining, there are really two simple ways to resolve this case. As Judge Graber noted, Section 1362 applies directly and provides a right to counsel here. And the second way is this ambiguous regulation, which read in context and in light of this court's decision in Zuniga, provides a right to counsel. So the easiest way to resolve this then is to apply Zuniga consistently as to everyone who enters reasonable fear proceedings. And that makes sense because there's only one regulation governing these proceedings. It makes no distinction between the two groups. And it's important to note that Zuniga was addressing the question of whether a right to counsel exists in the exact same proceedings at issue here. These reasonable fear proceedings are governed solely by Section 1208.31. And that regulation now provides a right to counsel. First of all, it provides a right to counsel in the reasonable fear interview, right? So there's already a provision that says everyone who's in those proceedings has a right to counsel, but it's silent as to whether they have that right to counsel in the hearing that follows. And in that subsequent hearing, Zuniga answers that question. It solves that ambiguity. So this court read a right to counsel into that ambiguity in the regulation. And as the Supreme Court held in Clark and this court held in Shea, because that ambiguity has been resolved in that way, the regulation must apply equally to both groups of non-citizens that enter reasonable fear proceedings. So you, but you have some distinctive issues that are you the translator? And I'm happy to address those as well. You say, what's your, what's the textual basis for a right to have a translator during the whole duration of reinstatement proceedings? The regulations just say that notice of reinstatement determination needs to be communicated to the petitioner in a language he understands. And it seems Myrtle was able to understand it. So I, I'm a little bit, I'm a little bit skeptical of that. And you argue that no prejudice is necessary. Can you give us anything more concrete as to? Of course. Your Honor, so actually what you're asking about is the reinstatement issues, which I am, I could address those, but, but Aldo Pontaroso, my colleague will be, is, is fully, fully prepared to answer those questions regarding translation and, and, and regarding prejudice. Okay. Thank you. Yeah, I'm sorry. I'm sorry. I know this is confusing with all of the attorneys who are addressing different issues. But, but I do want to address the particular issues in this case, if you have no further questions about the right to counsel stemming from the statute and stemming from the regulations. Okay. So to review the particular facts of Myrtle's case, as I think Judge Callahan noted, Myrtle's case is the one in which first he was told that he had the right to be represented in his first hearing. And then when he returned for his second hearing, he was, he actually told the immigration judge that he had talked to an attorney and that attorney had said they would be there. But the immigration judge didn't take any steps to protect his right to counsel in that context. So she forced him. I want to kind of, there's a tension here because all of this is supposed to happen, you know, first off, you know, they have the right, whether it's a statutory right or whatever, but then it has to happen within 10 days. So if we create it as a statutory right, then what I'm seeing here is that it all blows up because then if you have a right to counsel there, but then the person wants a continuance and the whole thing, and so then you can spend six months continuing that part of it before you even get to the next part of it. So how does that all synchronize together? I mean, then the, you know, the, the, the big Mac comes, you know, we've opened the floodgates. No, we really haven't. And that's, that is like, I understand the concern in terms of the fact that this is supposed to be, you know, the government has an interest in this being a quick proceeding. Yeah. Yeah. But they also, I also have an interest in making sure that people aren't being deported to face persecution or torture. Right. So there's kind of, there is a tension. Counsel, could I, could I ask a question here? Of course. Is that okay? Yeah. When a person was told they had a right to counsel and made an arrangement apparently with counsel and counsel didn't show up, why is that the government's problem? In other words, there's a privilege to have counsel at your own expense. And if you have a problem because your lawyer doesn't show up, even though you have gone and made the arrangement is, you know, what, why, why is there more? Because it isn't a right as in a criminal proceeding. It's a privilege at your own expense to get a lawyer. Right. Of course. So it's, it's not so much the government's burden to, you know, make counsel appear, but it's the immigration judge's burden to just take some particular care because now it's possible. Why? Because the person, well, I just don't understand why that's, why that's necessarily the case. Yeah. I can address that. And I mean, of course it's speculation because this is already established in the ninth circuit, this kind of affirmative duty that's triggered when counsel appears to be missing or absent through no fault of the respondents. Right. So this isn't a whole line of cases stemming from Aguilar in the 80s to Hernandez Gill in 2012. But I think the reason is that these respondents who are already, they already had so many factors working against them to be able to represent themselves. So in this case, he's a monolingual Haitian Creole speaker. He has no understanding of the U.S. system. And he's working on the assumption that his attorney is going to be there. Right. And so he's not, he hasn't prepared to represent himself. So we're not asking for doubling the time or for giving the same amount of time. But the immigration judge does have to take some steps to figure out, according to this court's case law, to figure out why counsel is absent and maybe to grant even just a day or a week continuance to make it possible for counsel to be present. And in some cases, all that's been required is just calling the attorney. But here, the immigration judge made no effort whatsoever to identify where counsel was and why they were missing. And under this court's case law, that is required. So that's my speculation as to why there is this special rule. But it does exist. Judge Graber, I don't want to truncate your questioning. I don't have any more. Judge Stelma, do you have any more of this attorney? Okay. You're two minutes over. Indeed. So thank you so much for your patience. I appreciate your time. Thank you so much. And I will turn it over to my colleague, Mr. Pontrosa, who will be happy to address your reinstatement concerns. Okay. Thank you so much. Thank you. And I guess I'll say next. Next, state your appearance and go forward. Good morning, Your Honors, and may it please the Court. Aldo Pontrosa on behalf of the petitioner, Jonas Myrtle. And as my colleague indicated, I will be addressing the reinstatement issues in Myrtle's case. I'll start by answering Judge Callahan's question about what the textual basis is for this kind of translation or interpretation requirement in this case. It's DHS's own policy. DHS's own field policy manual says expressly in Chapter 14.8b3 that the officer must read or have read the notice to the noncitizen in a language that the noncitizen understands. And here, DHS simply failed to do that. The notice was communicated to Myrtle in English, despite the fact that he did not adequately understand English in order to participate in the proceedings against him. Your Honor also asked about the prejudice requirement in this case. First, it's worth noting that this case, this Court, has vacated reinstatement orders without a prejudice inquiry in the past. In cases like Martinez v. Lynch, this Court. He seemed to be able to answer pretty general questions. He was able to, he expressed his fear of returning to Haiti and was, you know, he may not have as high a level as something else, but if you look at the record, he's answering the questions responsibly. Your Honor, taking in light of the whole record, when we know that DHS ultimately afforded Myrtle an interpreter at every stage of the reasonable fear proceeding. And DHS regulations provide that an individual is afforded an interpreter when they can't proceed effectively in English. And the Immigration Court affords interpreters. So tell me what your prejudice is. There's nothing really concrete in your brief about what the prejudice is. So maybe I'm not, it seems that bandits and being afraid of the husband of someone with whom you had a child are not protectable grounds. So do you have some offer of proof as to what prejudice your client would have suffered had he had an interpreter? What else would have been presented? Well, Your Honor, that would go to the prejudice of the reasonable fear process. But in terms of just the reinstatement process itself before Myrtle arrived there, DHS, by not following the regulation, just simply failed to do what it needed to do to properly reinstate Myrtle's order. Is there anything in the record to dispute that Mr. Myrtle was, I mean, is there really any dispute that Mr. Myrtle was previously ordered removed, in fact removed, and reentered illegally? Is there any dispute as to that? Well, Your Honor, the dispute is whether or not DHS has met its regulatory burden. This court has said in cases like Villa-Andreano and Galindo-Romero that reinstatement is not an automatic process. That even if DHS thinks an individual is eligible for reinstatement, that doesn't alleviate the agency of its burden to follow the reinstatement regulation. But suppose the record otherwise conclusively establishes that he was removed and returned even if the regulations weren't followed? In that case, Your Honor, this court has previously vacated orders even where DHS has violated the reinstatement regulation and there was evidence that they met the factual prerequisites for reinstatement in cases like Martinez-de-Lynch and in Villa-Andreano where the factual prerequisites of reinstatement were not in dispute. So this court could still vacate on those grounds. And the reason for that, Your Honor, is because reinstatement really doesn't require much of the government at all. There's no right to counsel. There's no opportunity to present evidence or cross-examine witnesses. And the ultimate decision is made by a lay immigration officer, not a judge trained in the law. And the consequences of reinstatement, as this court has said, are both profound and severe. And so by cutting back on this process even more, the risk of error in reinstatement increases. That's why it's so important that DHS adheres to its own policy and follow these regulations to the letter of the law. I see that I'm running up on my rebuttal time, so I'll briefly conclude just by saying that mistakes like this are not meant to happen in reinstatement. DHS shouldn't be obtaining somebody else's forms and apparently relying on them in order to reinstate an order. There shouldn't be errors on the reinstatement order in this case, Your Honor. DHS failed to obtain verification of Murdoch's prior removal. And we really expect reinstatement to be a mechanical process. That's why we allow lay immigration officers to make these big decisions. But where that process breaks down, it is for this court to step in, correct the process, and ensure the overall integrity of the reinstatement system. If there are no further questions, I will reserve my remaining time for rebuttal. All right. Any further questions? OK, we'll put you two minutes on the clock for your rebuttal. Thank you. Good morning. Good morning, Your Honor. My name is Anthony Lee. I will be speaking for nine minutes and reserving two of my minutes for rebuttal. I will watch my own clock. And state your appearance for which client. Thank you. My name is Anthony Lee. I'm a law student at the University of Idaho. I'm here today to represent Ms. Nez Chavez. We ask that this court remand this case for a new hearing so that Ms. Nez Chavez may properly present her claims. In Guatemala, Ms. Nez Chavez endured rape, sexual and physical assault, and abduction, and she fears returning to the scene. I'll be speaking today just on two issues. First, the IJ's invalid waiver of counsel and denial of continuance. And second, the misapplication of the withholding of removal standard and errors with respect to protection under the Convention Against Torture. As a preliminary matter, I'd like to recall that the reasonable fear interviews and the reasonable fear review hearings are, as we've discussed earlier, simply screening mechanisms, that an individual may only show a reasonable possibility of persecution and torture, and that once they make it through these screening mechanisms and are put in a full withholding hearing, the burden becomes higher. But again, as the government made us aware yesterday of a recent decision in Alvarado Herrera, this court has reaffirmed that the showing in these reasonable fear review hearings is simply a 10% likelihood of persecution or torture. Let me ask you this. Your case has a factual difference than some of the others. And here the IJ specifically asked Ms. Nez Chavez if she wanted to continue without a lawyer, and she specifically stated that she did. So why is this a waiver of the right to counsel that she may have had? So, you know, that's factually different than all of the other ones. And so she said she was told about, she was given the opportunity, and she kept saying, no, I don't want anyone. No, I don't want anyone. No, I don't want anyone. So why does she get to go back? Well, we disagree with that reading of the colloquy. This court's precedent in wrong, it has to be a knowing and voluntary waiver, which requires an inquiry into whether or not the individual appreciates the implications of proceeding without counsel. And there was no such inquiry. The IJ asked if she had an attorney. First, he advised her of her right to an attorney in the hearing, as well as her right to present evidence and question witnesses. He asked her if she had counsel. She said no, and she requested a continuance to seek counsel, an issue which I'll discuss momentarily. And then the IJ stated that the hearing had to proceed that day. And she said, I will speak on my own behalf. May God help me. But nowhere in that colloquy did she imply whether or not she understood that at the end of the hearing, she very well might be deported. There was no inquiry if she understood the gravity of... May God help me. May God help me. We don't ask for God to help us unless we think we're in trouble. Certainly, and that speaks to whether or not she was in a position that she wanted to be in without help with... I don't think that that shows that she appreciated the danger that she was in. I think it shows that she was scared. Now, with respect to the voluntary aspect of the colloquy, the judge, and again, as I'll discuss shortly, the IJ misstated the law with respect to continuance, and he denied her request. And insofar as that is the case, he then asked her again if she would like to proceed. And she said, yes, but the fact of the matter is that if there is only one option given a question, namely to proceed, that is not a voluntary decision. Now, moving on to the denial of her continuance, the IJ simply did not have to go forward that day. He got the law wrong. He stated, and this is in the colloquy, that the regulations require that I complete the review today, and that is simply half of the regulation. The other half of the regulation states that in the absence of exceptional circumstances, the hearing must take place within 10 days. The IJ misapprehended the fact that he had discretion. Now, the government suggests that a request to seek counsel, continuance to seek counsel, simply does not meet that requirement of an exceptional circumstances, but that misses the point. The preliminary question is whether or not the IJ appreciated that he had discretion to give in the first place. Had he appreciated that discretion that he had, he would have asked, well, Ms. Chavez, can you explain to me why it's so important that I grant you this continuance? But that is not in the record. There was no such inquiry. How did the IJ prevent Ms. Chavez from developing her claim under the Convention Against Torture? What information was she prevented from presenting? Certainly, the IJ stated to, the IJ asked Ms. Chavez if she had anything to add that she had not already discussed with the asylum officer foreclosing the possibility of her being able to present any further testimony on the matter, especially considering the fact that the IJ advised her of that right. What would she have presented that she didn't present? What would that have been? She could have, you know, more deliberately flushed through, flushed out the CAT claim. She could have more deliberately discussed. Give me specifics, though. What didn't she get before the IJ? Not, well, what specifically didn't the IJ have? Sure. Sure. Instead of being able to talk about these issues, she began to talk about the political opinion claim. But, again, if I recall, if we can discuss the standard for prejudice in this case is low. You simply have to show that there are plausible grounds for relief or that the alleged violation may have affected the outcome. Had she the opportunity to have counsel, they could have presented more discussion on country conditions in Guatemala, how the Guatemalan government fails to, fails wholesale to deal with violence against women in that country. I think she could have presented a lot of things. But, again, we have to recall that in this screening process, in this screening mechanism that we're in, the bar is very low. It is simply a 10% chance that she might prevail in a hearing, in a withholding hearing. And that was affirmed in Alvarado Herrera just the other day. What's the standard of review that we apply to her claim that she was persecuted based on a protected ground? What's the standard of review for that? Well, I don't think we need to even get there because the government, in its briefing, conceded that her particular social groups that she proffered to the asylum officer and the IJ are cognizable and that a remand might be required on that point alone. But substantial evidence would suggest that the groups that she proffered to the IJ, considering the low bar of 10% likelihood in that hearing, she gave certainly more than enough information. Well, doesn't she have to show that her presentation to the immigration judge compelled a certain conclusion? I think she gave plenty of testimony on that. I'm asking you, on the standard of review, doesn't she have to show that it compelled that conclusion? Not insofar as there are, the decision that the IJ made was unreasonable. There is no overview over legal issues, and we are suggesting that the IJ made very significant legal errors. Do you want to preserve the balance of your time? I do, thank you. Okay, let me make sure, we'll stop the clock, but do either of my colleagues have any questions that they would like to ask of this lawyer? Not at the moment, thank you. All right, thank you. Let me ask you one thing. Since you are appearing as a law student, thank you, and is your advisor around here somewhere? Yes, she is. Okay, so you're, all right, just making sure you're operating with a net here. Okay, thank you. All right, we'll see you back on rebuttal then. Okay, thanks. Okay, we're ready. Okay, good morning, your honors. May it please the court, my name is Jessie Carlton. I represent the government in this case, and I'm available to discuss the general rights of counsel issues. I think we've agreed that I would do that for about 20 minutes, and my colleagues are available to discuss specific factual issues related to the Myrtle case and Ms. Chavez. Ms. Strokis is available for the Myrtle case, and Ms. Camilleri is available for the Ms. Chavez case. And then I can also speak to specific facts relating to Orozco. Okay, go ahead, then. So, your honor, in reasonable fair proceedings before the IJ, there is no statutory or regulatory right to counsel for noncitizens whose removal orders are reinstated. And so, therefore, there can't be a denial of that right. Counsel, I'd like to interrupt you right away and get to the heart of what my concern is. Section 1362 grants the privilege of counsel at the person's own expense or pro bono in any removal proceeding before an immigration judge. And there's clearly been a proceeding before an immigration judge. So, the only question is whether the broad term any removal proceeding applies. And as I understand it, the government's position is that the only thing that counts as a removal proceeding is a proceeding in which it's determined whether the person is removable. And that doesn't seem to cover it, in my view, because removal is broader than removable, which describes only the person's status. So, why isn't the broad term any removal proceeding one that covers anything related to removal, including an exception to removability or relief from removability? So, your honor, I have a couple points in response to your question. First of all, the reasonable fear review proceeding that we're talking about in these cases, as other counsel have indicated already this morning, is simply a screening mechanism. It is not a substantive hearing or removal hearing or anything of that sort. It's actually only a proceeding to determine whether there's sufficient facts to warrant an application and a hearing on these claims for protection and withholding of removal. So, it's not directed at whether they're actually eligible. It's only whether they can even advance an application. So, I think that is a big distinction from a regular or what we would call a traditional removal proceeding or even the withholding only proceeding that follows the screening mechanism. And even backing up to the initial meeting between the asylum officer and the noncitizen, counsel is allowed during that proceeding as well. This is more akin to, you know, the IJ kind of reviewing the asylum officer's determination, you know, without this is as the Alvarado court indicated yesterday in its opinion. This is a summary proceeding. It is a cursory. It is an abbreviated proceeding that traditionally does not include all of the attendant procedures in what is a traditional removal proceeding. So, I think that very clearly sets this apart. Oh, go ahead. If we were to agree with you, wouldn't this be the only proceeding before an immigration judge in which the individual would lack the privilege of bringing counsel? Well, Your Honor, I can't say that specifically. I can't answer that completely, you know, looking at any time. Well, do you know of another one? Do you know of any other? I can't think of something right off the top of my head, but I can certainly try to get back to you in response to that question. But I think the second point about these particular cases is that they involve the reinstatement of a removal order. So, these individuals have already been removed. They've been ordered removed. Let me back up. They've been ordered removed. They've been removed, and they've illegally reentered the United States. And so, Congress specifically chose not to provide a statutory right to counsel for these individuals based on those particular facts. So, this situation is very distinct. Excuse me. Counsel, that's clearly so with respect to the reinstatement piece. But once there's a reasonable fear, that would be an exception to removal or protection from removal if it's established, even in a reinstated removal context, correct? So, the consequence would be not being removed if the person is successful, notwithstanding that it's a reinstatement. Am I right about that? Well, again, as I pointed out previously, this is the perspective. If the person is successful, they would be protected from removal even in the reinstatement context. Is that true? Well, they might be protected from removal at a certain period in time, but they are still removable. They've still been ordered removed. So, it's not exactly that clear cut. And as I mentioned before, the proceeding we're talking about here where there is no statutory right to counsel is the screening proceeding. This is not the proceeding that determines their actual, you know, whether they've actually proven that they should be afforded that kind of protection or withholding from removal. So, is your argument basically because you've already been removed, and in some of the individuals here have been removed, they have more than one removal hearing have taken place. Correct. And as a part of those, there was a certain amount of due process that came about there. Is it your position that Congress can treat that person differently than someone that's just coming in for the first time? And if so, what's your best textual support? So, Your Honor, that is, in fact, correct. The statute that Congress enacted makes very clear that these individuals should be treated differently, and that is why under the reinstatement statute they are not allowed. They're generally, it's a very strict statute, they're generally not allowed to have any additional recourse except for, you know, this situation, the reasonable fear proceedings is something that is done to comply with our international agreements. And so those regulations were enacted after the statute that clearly precluded really any other kind of relief for these individuals. Because of their recidivist nature, because they've already been ordered removed, they've actually, you know, touted the law and come back despite that removal that already took place. That is very different than the context addressed by this court in Beniga, where there was, you know, there was actually a statute that addressed that situation. Those individuals had not been ordered removed. They're aggravated felons, and there are abbreviated procedures for them under that statute. But that statute clearly provided a right to counsel, and that is what the panel decided in Beniga. In this case, Congress did not afford these individuals any statutory right to counsel in the statute. And so that is a very distinct piece, and I think that's something that the panel in Beniga relied on throughout, was that hook to the statute that does not exist here. What is your response to counsel's argument that the regulation interpreted in Beniga is the only regulation governing these kinds of proceedings, and that it must be interpreted the same way for everyone who's in that proceeding? So I think that that, I don't think that that is a correct assertion in this context, and it's for the reasons I've already stated, because we have a situation where there are two different, these individuals are not similarly situated in the sense that they are in different postures, because you've got one individual who... Is it true that there's only one regulation, though, that governs the procedure? That is true for the reasonable fear review proceedings, but the individuals enter into that process from two different tabs, essentially. So they're coming into it from two different places. But to the extent that Beniga suggests that this counts as a form of any removal proceeding, why wouldn't that carry over to everyone who enters into this kind of proceeding? Well, again, I mean, Beniga explicitly did not apply this to individuals who have reinstated orders, and the court, you know, did not extend it that far. And there's a reason for that. The reason is because there is no statutory right provided under the reinstatement statute, and because these individuals have, in fact, been ordered removed previously. They are standing in a different set of shoes, so to speak, than somebody under 1228, under 8 U.S.C. 1228. Those individuals have not been ordered removed, yet they're in a different posture. So I think that is a very distinct reason. You know, the government respectfully disagreed with the court's determination in Beniga. The government had previously indicated there should not be a statutory right to counsel, or there isn't in either situation. So to the extent, you know, the government respectfully did not agree that this should be extended. Well, we are bound by Beniga, and so is the government. So the fact that the government disagrees with it is not something that is of particular assistance. But I guess my concern is that an identical regulation, that governing an identical procedure would be interpreted differently for different people, and that seems not the usual way of doing things, at least. I understand the concern, Your Honor. However, these individuals are not in the same posture coming into these proceedings. So while they certainly are entitled to be afforded those proceedings, a statutory right to counsel should not be attached for those who have reinstated orders of removal, you know, for the reasons I stated. Now, if someone even, okay, Morales talked about you don't have a right to counsel at the reinstatement part of it. But if you show up with a lawyer at that, you wouldn't turn that away. They can have a lawyer there if they want, right? So the IJ has very broad discretion, and these proceedings and the regulations specifically design it that way. The IJ can, you know, they can be permissive in that regard. So if somebody brings a lawyer, I think it's highly unlikely that an IJ would turn that attorney away. There would have to be some really significant reason that would probably not pertain to the noncitizen, but, you know, if the lawyer had done something really egregious. But it would be a very unusual situation that that would happen. So there is discretion. The IJ does have that discretion. But the discretion does not equate, there's still not a statutory right. But certainly, yeah, correct. I understand the distinction there. But let's, all right, then there's this 10-day situation. That's what the reasonable fear has to happen within 10 days of the reinstatement? Okay. That's correct. So hypothetically, if we were determined that there was a statutory right, but then it also says that the reasonable fear has to be concluded within 10 days, tell me, I'm assuming you have a parade of horribles there that you would want to relate to the court. So I'm trying to, I'm just trying to look at this from a practical standpoint as well. You're basically saying the status of people that have already been removed and may have been removed more than one time and have their due process in, you are treating them as a different status than someone that's coming for the first time. And you say that the statute, that the scheme by Congress allows that. Okay. If we assume that to be correct, but then, well, if we assume it's not correct, then you have to give them a right, you have to give them a right to have counsel at their own cost during this reasonable fear. How does that come up against the 10 days? Because the 10 days is rather specifically stated. It is specifically stated, and Congress specifically wanted these proceedings for individuals who have a reinstated order of removal to be very brief. And also for those under 1228, those who are aggravated felons. So in both situations, but really very specifically in the reinstatement context, Congress wanted this to happen very quickly. Counsel, it seems to me that both issues can be accommodated. You have the privilege to bring a lawyer, and you need to know that, but you also need to know that this is going to happen fast. And if you can't find one, maybe that's your problem. But that doesn't – it may be impractical in some cases, but it doesn't seem that they speak to the same question. One is when you show up, and the other is with whom you show up if you can. Well, as we discussed previously, there is discretion. The IJ does have discretion. I don't think any of the noncitizens in any of the cases we're discussing actually were denied, you know, asked for counsel during the reasonable fear removal proceeding and were told that they couldn't have counsel. I think there was the one instance where, you know, somebody indicated that maybe they had previously had counsel and that person wasn't available. And I think in that proceeding, I think we're talking about Myrtle, Myrtle was given a significant extension of time initially to locate counsel and I think still ended up coming to the proceeding without counsel. So, you know, these particular situations, you know, specifically are not situations where, you know, the IJ said you can't have somebody here. Certainly there were some issues with the timing, and I think at least in one of the cases. But, you know, that's – they weren't – you know, I think it's unlikely that if somebody says they want to bring somebody that that's going to be turned down. However, that is, you know, a statutory right opens up a whole different situation. And if Congress wanted that to be the case, Congress would have provided for that under the reinstatement statute, like it did under 1228, which is what – Well, counsel, that's actually a very interesting point because 1362 grants the privilege of counsel in any removal proceeding, and we're trying to determine what that means. There are a number of situations in which Congress said you – that they refer to removal proceedings under Section 1229 or they refer to a specific kind of removal proceeding. And so why isn't any removal proceeding necessarily a larger compass by the canon of construction that we don't want anything to be surplusage? And so if it only referred to removability, it would be completely unnecessary. Well, Your Honor, it's not just about – I mean, I would say, you know, removability is a big part, but it's also the kind of proceeding that's being provided. I will go back again to the fact that this specific proceeding is not a removal proceeding. The government does not consider it to be a formal removal proceeding with all of the rights and the substantive questions that are raised in traditional removal proceedings. So while I can understand, you know, the breadth of the statute that you referred to, 1362, it's the government's position that that statute does not provide in this situation because the reasonable fear of removal proceedings is simply screening. You've been referring to things like traditional removal proceedings, full-blown removal proceedings, et cetera, but the statute says any removal proceeding, which suggests that it doesn't have to be traditional or full-blown or any other adjective. Understood, but the government's position is that this reasonable fear review proceeding is not a removal proceeding. It is a screening mechanism. It is a review of the asylum officer's determination. So it is our position that that's not – would not fit that definition. Oh, go ahead, Judge Stoneman. Go ahead. Would you agree that the danger to the petitioner from an incorrect, adverse reasonable fear determination is significant? Well, I think that certainly any immigration proceeding comes with some very high stakes for the noncitizen, so I don't think the government would dispute that fact. However, in this situation – My question then is, are the stakes the same or different, depending on whether it's a removal proceeding or a reinstatement proceeding? Well, I think Congress determined that they think that this is a little bit different because in a removal proceeding – My question is, you said there are high stakes here. Are the high stakes different depending on the context of the decision? Again, I think, you know, from a standpoint from the statute, Congress determined that they were different for somebody who's already been removed and reentered versus somebody who's having their first opportunity to determine whether they should be removed. So there's a recidivist, somebody who's entered, then removed, and then reentered again illegally is in a different posture than somebody whose first determination is being presented as to whether or not they should be removed from the country. Did they have removal proceedings previously where they could have raised these fears? Oh, certainly. Yes. These fears could have been raised at any of the prior proceedings. And for Mr. Orozco, they were not raised until this particular situation arose. Is it not possible that there's a new reason for fear? I mean, I can't – I mean, certainly things change all the time, and so I can't speak to whether, you know, that goes for Mr. Orozco's situation. In theory, they may or may not have had an opportunity to raise this before. Maybe they have, maybe they have not. Correct? It's certainly fact specific. It would relate to the case. I'm sorry, Jed, Selma, I cut you off. No, that's okay. Please feel free. I think I got the essence of the answer I was looking for. Thank you. Okay. Your time has expired, but I want to make sure that neither of my colleagues have any additional questions of you. Judge Graber? No, thank you, though. Judge Selma? Thank you very much, Your Honor. I'm sorry. Okay. Thank you very much for your time. I appreciate it. Good morning, Your Honor. Jessica Shokas on behalf of the United States Attorney General. May it please the Court. I am available to answer any questions related to Mr. Myrtle's reinstatement claim, and I will refer to Ms. Carlson's expertise regarding the right to counsel issue in these cases. I want to jump right in to Judge Callahan's question with my opposing counsel. First, there is no dispute as to the factual predicate for reinstatement in this case. In fact, Mr. Myrtle admitted to the agency that he is a Haitian citizen who is subject to a prior order removal and that he had illegally reentered the United States. The agency, as referenced in the I-213, ran biometric reports from the automated biometric identification system and the automated fingerprint identification system databases that pulled up his prior expedited removal order that is in the record. And the arresting officer witnessed him wading across the Rio Grande, which is the river that separates the United States and Mexico. Mr. Myrtle has never challenged any of the factual prerequisites for his reinstatement. To answer Judge Callahan's question about the textual basis for translation, the answer is that there is none in the regulation. The regulation does not provide for any translation requirement whatsoever. The only basis that brings up any translation is the DROPM, the Detention and Removal Operations Policy and Procedure Manual, which is simply just not judicially enforceable. It is an internal policy memo. It is a guidepost for DHS officers to help navigate them through the complexities of immigration law. Judge Graber, go ahead. I'll follow you. I was just going to ask if there isn't a due process component. If someone came in and clearly could not speak English, there would be no answer to say, well, there's no statute covering that. We'll just go right ahead. Judge Graber, as I was getting to, the DROPM does provide, it does state explicitly a language that the alien understands. This does not mean the noncitizen's best language, and as Judge Callahan previously pointed out. No, I understand that. I was responding to your comment that there's no statute requiring it and that we can't enforce the manual. And my question to you was, regardless of whether we can enforce the manual and regardless of any statute, isn't there ultimately a due process question that the person must be able to at least understand the proceeding? Certainly, Your Honor. There is a due process question there, the opportunity to understand what's going on. And that's what the DROPM, I think, envisions is in the language of the statute. That would be a constitutional claim that we would have jurisdiction over, wouldn't it? I was going to ask that. Correct, Your Honor. Yes, you would have jurisdiction over that constitutional claim. But prejudice would not be presumed there. Going back to Judge Callahan, I think it was Judge Callahan's question of my opposing counsel. I can't envision a way in which prejudice could be shown in this case because there was no challenge to the factual prerequisites for reinstatement. And even if there was a challenge to the factual prerequisites, they were established by biometrics and by agency observation. And in this case, in Mr. Myrtle's admissions in English, that he was Mr. Myrtle, he was a Haitian citizen, he was previously ordered removed, and that he has unlawfully reentered the United States. So even the DROPM doesn't envision best language. It envisions a language that the noncitizen understands. That's more process than what even the regulation provides for. And I would argue that it's sufficient process constitutionally that you understand what is going on. And the evidence in this case plainly shows, notwithstanding counsel wanting it not to show it, that Mr. Myrtle understood. He spoke with the arresting officer. He spoke with the interviewing officer when the record of sworn statement was created. After the three prerequisites had already been determined via biometrics, he had the RSS interview where he spoke in English. He identified himself in English. He identified his place of birth, his date of birth, that he had previously been ordered removed in English. He even signed a sworn draft stating that all of these answers were correct. And he never told, at least there is no documentation that he ever told anyone, that he could not understand what was going on. And I would argue that that's all that is constitutionally required is that he understood. And the evidence here shows that he did. Let's say hypothetically, and we haven't conferenced on this, so I'm saying this is a hypothetical. I know the government is arguing against the statutory right. So let's say hypothetically we say he had a statutory right to counsel in the reasonable fear part of it. When the IJ asked if Mr. Myrtle was representing himself, Mr. Myrtle answered that he had found someone to help him who said he was going to attend the hearing. The IJ didn't ask so much as a follow-up question but proceeded with the hearing. If there is a statutory right to counsel, do you acknowledge that Mr. Myrtle did not knowingly and voluntarily waive it? So I'll have to defer to Ms. Carlson's expertise on this issue, on the right to counsel issue. Certainly the government's position is that there is no statutory right to counsel. If this court were to determine that there is a statutory right stemming from a statute, I think, Judge Conhan, your point about the 10-day guideline is really instructive here because Mr. Myrtle had already been afforded three times the amount of time. He was afforded a three-week continuance on top of the 10 days that were already required to complete these proceedings. And he still didn't show up with counsel. What is required in that circumstance, I think, is not clear under any case law. He had been told- Well, counsel, excuse me, opposing counsel said that there were Ninth Circuit cases that when someone is supposed to have counsel and counsel doesn't show up, the IJ is required to at least make some minimal inquiry, a phone call or a one-day continuance or something. Do you disagree that there are such cases? Judge Graber, I'm not familiar with any cases that are in this specific circumstance. In the regional fear review proceeding stemming from- No, no, counsel, that's not responsive because the hypothetical- If we did so conclude and if we have cases saying that when you have that privilege and your lawyer inexplicably doesn't show up, the IJ has certain obligations, do you disagree that there are cases saying that there are such obligations? I wouldn't disagree that there are cases so stating in other circumstances. I'm not familiar with one that would be directly on point to this circumstance.  I'm not saying that the court couldn't. But specifically in this, you know, the unique circumstances that are presented here and the unique tension between the 10-day rule and the right to counsel issue that we're talking about, I'm just not familiar with those cases. Potentially, my opposing counsel can point to one specifically addressing these circumstances. Your Honors, I did want to discuss just briefly the departure verification form because there's been a lot of discussion in briefing and now in 28 days about the departure verification. And simply, the regulation does not require that the agency consider the departure verification form. It actually requires that the agency does consider certain types of evidence such as the prior removal order, which is in the record here. But it doesn't specify the departure verification form. And in this case, it would indeed be superfluous because as I stated previously, all the prerequisites have already been established and the only information that the departure verification would give the agency had already been established that Mr. Myrtle had exited the United States. And necessarily by waiting across the Rio Grande, he had to have exited the United States to be witnessed reentering the United States. So, I just wanted to note that. If there are no further questions for Your Honors, I won't take up any more of your time. Okay. Thank you. Thank you. Good morning, Your Honors. May it please the Court. This is Dana Camilleri for the Attorney General and Ms. Chavez. As with Ms. Strokis, I'm here to answer any specific questions about this case. I did want to take a moment to respond to Petitioner 28J that she filed yesterday. There's an important distinction between this case and the facts in Alvarado Herrera in terms of the cat remand, and I just wanted to highlight that fact. Alvarado Herrera, as part of his claim, asserted that he was part of a shootout with gang members that were wearing police uniforms and used police badges in order to enter the residential complex. And that was sort of what hinged on the remand in order for him to further develop this cat claim. There's no assertion of governmental violence in this case. She did not report her rapes to the police. It's just a couple of statements that she thinks that they're corrupt, that there's no specific facts that she testified to or personal knowledge. And so we don't think that remand would be appropriate in her case. Well, let me ask, hypothetically, if we were to find that there's a statutory right to counsel, is she in the same position as the other lawyers, I mean the other petitioners, in the sense that the IJ specifically asked Ms. Chavez if she wanted to continue without a lawyer so did she waive that right, if she had that right, or what's your response on that? Yes, and I think we expanded on this in our brief. But if there is a statutory right to counsel, she has knowingly waived it. She was provided with a free legal services list before both the asylum officer, the immigration judge had checked with her that she had received the list, and she said she wanted to move forward. I did want to address the idea that she doesn't understand these proceedings. This is her fourth reinstated removal order and her second time in reasonable fear screening. So I would say she's actually quite knowledgeable about the proceedings and what it would mean if she does not get past the screening process, as that's what happened last time she was removed. Some counsels seem to indicate that these people that do these reasonable fear on the screening, they don't really know what they're doing and they're not lawyers. So do you want to respond to that? Right, that's what I wanted to push back on, which is that this is someone who has been removed. Actually, the removal order has been executed four prior times. Well, you're talking about her, but I'm talking about the people that do the reasonable fear. One of the other pro bono counsels sort of criticized the credentials of the people that do it, that it's less process and these aren't people that really… Of the asylum officers? Yeah. Oh, asylum officers are trained specifically to evaluate these types of claims, and I think, at least in my case and I believe the other cases, we have significant notes. It's almost a transcript word-by-word for the questions. It was a four-hour interview, and I would actually argue that asylum officers are very well trained and they know exactly what they're doing and how to evaluate these claims and how to elicit testimony from the aliens so that they can evaluate the claims. It seems that the IJ sort of, you might say, the IJ ended the reasonable fear hearing here a bit abruptly. Why didn't that deprive her of an opportunity to develop her claim under the Convention Against Torture? I think that for where I was pushing on, well, what else would you have done? Do you want to respond to whether it was abruptly ended, that she should have been allowed to do more or that? I do want to respond to that. I think, as we pointed out in our 28J, Alvarado Herrera quite explicitly says that the IJ in these proceedings is sitting in an appellate capacity. He's under no obligation to listen to new claims, which he did try to raise some new claims, and when he asked why she had not raised them before the asylum officer, she said the interview was very quick, and he said, no, it was four hours, so he kind of questioned the credibility of bringing a new claim before him in his appellate capacity. So we would argue that, and also, I'm sorry, in the reply brief, they were talking about psych reports and background country reports and other materials that would really have turned this into a full-blown withholding-only proceeding, which is not the screening process that this was envisioned to be. Okay. Do either of my colleagues have any additional questions? No, thank you. You still have time, so you can keep talking if you want. If there are no further questions, then I'll rest on my brief. I had one, with the permission of my colleagues, I had one question, but I forgot to ask the main counsel for the government that was talking on the statutory right. Would you object if I, since we have time on the clock, if I asked her that question? No. No, of course. Go right ahead. Can we get her back? Yep. Hello. Okay. I see Ms. Carlson, I believe. Yes. Can you hear me? I can hear you. Oh, there you're back. Your face is back now. The question that I had, now these briefs were filed some time ago, and there's obviously a new administration at this point that some would say is more immigration friendly than the last administration. Do you represent the position that you're taking as a government lawyer? Is that supported by the present administration, or how does that work? I mean, I can't speak to a political position. I can only speak to the position of the United States and the Department of Justice in this briefing, and I've not been apprised of any alternative course to be taking here. All right, so the Department of Justice is still supportive of the position that you're taking in your brief, as far as you're concerned. Correct. I mean, they could come and tell you don't take that position, but that's not happened. Is that correct? I've not been apprised to. We are maintaining the position that was asserted in our briefing. Okay. All right, did either of my colleagues have any questions in view of that? No, thank you. No, thanks. All right, so now we can go back to our rebuttal times. I think we had Mr. Steffi. I think I gave you three minutes. Is that correct? That's correct, Your Honor. Thank you very much, Judge Callahan. Three points, hopefully quickly, in rebuttal. The statute says any removal proceeding. We've heard many times now the government seems to want to read that the formal removal proceeding or traditional removal proceeding. That language is simply not in the statute. More importantly, this court is not alone in making that observation. The Zuniga panel said, at page 469 of this opinion, that any removal proceeding language supports a right to counsel in this very context. So this court need only reaffirm the observation that the Zuniga panel has already made. And finally, I just stress on this point, the consequences of adopting a different interpretation could be severe. It would essentially be a license for the government to say, well, this proceeding doesn't involve an actually eligible claimant. So it's not a removal proceeding. The right to counsel doesn't apply. It's simply not. The statute is meant to be default catch-all provision. And it should be enforced. There could be a lot of status issues throughout. Like, for example, I can possess a weapon, but a convicted felon can't. So if you're a person that's been previously removed and had a certain amount of process, Congress would be within its right to give that person a more abbreviated type of process, would they not? Absolutely, Your Honor. And we don't dispute that Congress could do that. The question is whether Congress actually did. The government wants to focus on Section 1231A5. But we haven't heard nary a word about FARA, where Congress, as yesterday's decision in Alvarado-Hernandez said, enacted another statute that explicitly walked back the strict limitations in 1231A5. So I would urge the court to take a look at that. There are dual purposes here. And it's perfectly possible to harmonize those dual purposes. And I think Judge — forgive me, I'm not sure if it was Judge Sullivan or Judge Callahan — asked, well, they got the process the first time around. But, you know, some of the claims in these cases, the individuals returned because of subsequent persecution. They're asking for an opportunity to make that claim after their initial removal. And that's exactly what the statute contemplates. Judge Callahan, you also asked about the parade of horribles that may flow in light of the 10-day requirement. But I think I didn't hear an answer from the government about that parade of horribles. And I think it's important to stress the 10-day requirement with respect to the IJ is the same as the 10-day requirement with respect to the asylum officer. And remember, the government agrees you get a right to counsel before the asylum officer. So it's difficult for me to understand if the government is okay with the right to counsel before the asylum officer within 10 days, how is it so difficult for them to accept the very same right to counsel before the IJ? Also, Zuniga has been the law of this circuit for more than a year and a half now. If this was a problem, I am quite confident Ms. Carlson would be here telling you what a disaster the circuit created. We haven't heard any of that. So Ms. Carlson and I agree at a minimum that Zuniga controls administrative removal. But once you accept that, Your Honor, there is no basis, not in the regulation, not in Section 1362, and certainly not in the underlying due process principles that animate Section 1362 to draw a distinction. Accordingly, we would respectfully ask that the petition be granted. Thank you, Your Honor. Thank you. All right, we'll move to our next rebuttal. Thank you, Your Honor. I would just like to briefly make three points in rebuttal to the government's argument here. The first is that even though there are complicated arguments for the right to counsel in this context, the animating principles behind the right to counsel is simple, and that people in the same procedure, in the same proceedings, should be afforded the same procedure. As Judge Selna's question indicated, the stakes are exactly the same in this context, and there is no reason to apportion the right to counsel based on the manner in which DHS is attempting to remove an individual because the underlying question of whether or not they're likely to be tortured or killed is the same in both cases. The second point I'll make relates to the government's admission that under its interpretation, the IJ would be able to have discretion over whether or not to allow counsel at the reasonable fear review hearing. The court in Zuniga has already identified this as an absurd result in footnote 9 of that case, and it would follow here that by leaving this in the hands of an immigration judge in such a high stakes proceeding, that it would be a similarly absurd result. So it can't be that it's simply in the discretion of the IJ. And the last point I'll make is that the government here didn't seem to dispute that if there was a right to counsel, that it was violated in Myrtle's case, and specifically with regards to waiver. The Zuniga court applied the waiver standard from Tawadros that required a knowing and voluntary waiver, and here the IJ didn't secure that. She asked no follow-up questions of Myrtle, and this court has clearly expressed in its case law that silence is not enough to constitute a valid waiver. If there are no further questions, Your Honor, or any questions. Do either of my colleagues have any additional questions of Mr. Ponderosa? Thank you. Okay. And I think we still have Mr. Lee. Yes, thank you, Your Honor. Oh, thank you. Just a couple of points I would like to note. Ms. Camilleri noted that Ms. Chavez made just a couple of statements with regard to acquiescence. That is simply not true. She stated, I even made a police report, and according to the record here, I even made a police report, but they did not do anything. The police is very corrupt. They don't do anything. She noted that the police arrested her father's murderer and subsequently released him. She has seen police being paid off. The police sometimes work with the narcos, and the police are being threatened by the gang, and it's all in the newspapers, and the police are corrupt. People don't trust them. There's a significant testimony that goes to the point of acquiescence, and the government cannot have it both ways and suggest that this is merely a screening mechanism, but also that she should have presented considerable testimony. The considerable testimony could come at the withholding hearing. Again, this is a low bar that she should have met, and it's very clear on the record that she did. If there are not any further questions, I would like to close by, again, noting the gravity of the harm that Mrs. Chavez experienced in Guatemala, and why we so vehemently request that this court grant her a full withholding hearing. To appreciate the harm that she experienced, I would like to leave you with her final statement to the asylum officer. She stated, I am human. I would like the best thing possible to come of this, because I would not like to return to Guatemala. It's like committing suicide. For that case, I would stay here in jail for my children, to keep my children alive, and to keep my life. I will stay in jail for however long. Thank you. Thank you. So, I realized one thing. Okay, I did verify your supervisor on the Myrtle case, I guess, is Ms. York here, also, too, supervising on Myrtle. That was also a law student's presentation. Is that correct? Judge Callahan, our supervisor, Ms. York, is watching on the live feed, but we've been in communication all morning. Okay, great. Okay, thank you. All right. So, we indicated previous. Now, have I left anyone out? Is there anyone else who thinks they have time on the clock? It's been a little bit complicated regulating this, but according to my review, I think we've covered everyone. That being said, I would like to reiterate Judge Graber's initial comment of, we're always thankful for everyone that appears in front of us and when they're well prepared, and we're particularly thankful, always, for pro bono counsel. And I think it's a great experience for the students, and I think that everyone did an excellent job today. So, I thank everyone for their appearance and their comments on these complicated issues. My understanding is we were going to take a 10-minute recess at this time. Is that correct? Yes, please. And just for the formality, the three cases just argued are now submitted. Thank you. And if we could go ahead and take a 10-minute break before Pontiago Rodriguez is argued. All right, perfect. All right, thank you. We'll be in recess now, and we'll return for the last case on calendar. Thank you. Thank you, Your Honor. Thank you, Your Honor.
judges: Graber, Callahan, Selna